# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**COLUMBIA DATA PRODUCTS, INC.,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　**Case No. 6:06-cv-66-Orl-28KRS**

**SYMANTEC CORPORATION, f/k/a
Veritas Software Corporation,**

        **Defendant.**

_____

## ORDER

On January 17, 2006, Plaintiff filed a two-count Complaint, alleging copyright infringement and breach of the parties' prior Settlement Agreement. (Doc. 1.) On November 1, 2007, the Court denied Defendant's Motion for Summary Judgment (Doc. 102), and an eight-day jury trial commenced on November 26, 2007 (Doc. 123). The Court granted in part Defendant's Rule 50 Motion for Judgment as a Matter of Law as to the breach of contract claim and reserved ruling on the motion as it pertained to Plaintiff's copyright infringement claim. (Doc. 139.) The jury returned a verdict on December 5, 2007, finding that Defendant did not infringe Plaintiff's copyright in its computer software. (See Verdict, Doc. 144.) This cause is before the Court on Plaintiff's Second Motion for New Trial (Doc. 159) and Defendant's Response in Opposition (Doc. 172).

### I. Legal Standard

Rule 59, Federal Rules of Civil Procedure, provides, "The court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new

trial has heretofore been granted in an action at law in federal court." The decision as to whether to grant a new trial is committed to the discretion of the trial judge. Lambert v. Fulton County, Ga., 253 F.3d 588, 595 (11th Cir. 2001). "A judge should grant a motion for a new trial when 'the verdict is against the clear weight of the evidence or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict.'" Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1186 (11th Cir. 2001) (quoting Hewitt v. B.F. Goodrich Co., 732 F.2d 1554, 1556 (11th Cir. 1984)).

## II. The Merits of Plaintiff's Motion for a New Trial

Plaintiff raises five arguments in support of its motion: 1) the jury was improperly instructed as to Plaintiff's copyright infringement claim; 2) improper closing argument by defense counsel; 3) admission and exclusion of certain evidence; 4) the Court erroneously granted Defendant's Rule 50 motion as to the breach of contract claim and denied Plaintiff's motion to amend the pleadings to conform to the evidence; and 5) Plaintiff's counsel was denied the opportunity during voir dire to ask jurors their opinions regarding litigation.

### A. Jury Instructions

In support of its motion for a new trial, Plaintiff argues that the jury instruction pertaining to its copyright infringement claim improperly placed the burden of proof on the Plaintiff to prove the absence of Defendant's affirmative defense – namely, to prove that Defendant did not have a license to use the OTM software in the manner that it did. A copyright infringement claim requires a plaintiff to prove ownership of a valid copyright and that the defendant copied the copyrighted material. Under the unique circumstances of this

case, both elements were undisputed. Indeed, Plaintiff's theory of the case was that despite the fact that § 5(b) of the Settlement Agreement allowed Defendant to "retain copies of the Product, Documentation and OS ports for the sole purpose of providing maintenance and support for existing End Users," Defendant's posting of hot fixes on its website after the execution of the Settlement Agreement exceeded the scope of that license and constituted infringement. Thus, the only issue tried to the jury was the question of whether or not Defendant had a license – express or implied – to use Plaintiff's software as it did.

Although the initially-proposed jury instruction followed the pattern instruction and listed two elements for copyright infringement and then discussed the affirmative defense of license in a later instruction, Plaintiff's counsel took issue with also including an affirmative defense interrogatory on the verdict form. Specifically, Mr. Boudet argued that doing so was "an invitation for an inconsistent verdict and it misstates the issue." (Trial Tr. 115, Dec. 4, 2007.) He stated, "There can be no infringement if there's an express or implied license. It's subsumed. They're trying to get a second bite of the defense apple." (Id. at 111.) A concern arose that the instructions would define infringement in a way that was undisputed and that the jury would be invited to answer the verdict form "yes" as to the infringement claim even if the jury found that Defendant possessed a license for its conduct. When the Court pointed out the possibility of an inconsistency and the potential for confusing the jury, Mr. Boudet proposed to "add the words [to the originally proposed instruction] 'without permission,' then that would clarify that instruction. 'Without permission' or 'without authorization' or 'without a license.'" (Id. at 116.) The Court accepted Plaintiff's suggestion, and the parties submitted an agreed-upon, revised instruction the following morning. The

parties agreed to the proposed instruction as given except that Plaintiff wanted the words "after March 3, 2005" added and Defendant wanted "for the sole purpose of providing maintenance and support" added. Both of those requests were denied. Neither party objected to the substance of the instruction as given – apart from wanting the above few words inserted – or the framework in which the burden of proof was presented to the jury. By not objecting, Plaintiff waived any argument it may have had regarding it. See Ford ex rel. Estate of Ford v. Garcia, 289 F.3d 1283, 1287-88 (11th Cir. 2002) (holding that no party may claim error in the giving of a jury instruction in the absence of an objection so as "to prevent unnecessary new trials because of errors the judge might have corrected if they had been brought to his attention at the proper time") (quotation marks and citations omitted).

In addition to waiving the argument it now makes, Plaintiff also invited the very error it complains of with respect to the instruction on its infringement claim. Plaintiff proposed adding "without a license" to the original instruction setting forth the elements of the claim, and Plaintiff agreed to the substance of the instruction given, drafting and submitting the instruction to the Court. The changes were precipitated by Plaintiff's attempt to keep Defendant's affirmative defenses off of the verdict form. Had Plaintiff not insisted that asking the jury whether Defendant had a license was improper, no change to the instruction would have been necessary. Plaintiff's version of the verdict form, however, invited a Plaintiff's verdict even if the jury found Defendant had a license to post hot fixes on its website – an inappropriate result. Indeed, Plaintiff's counsel argued that the absence of a license was "subsumed" within its infringement claim. The remedy was proposed by Plaintiff, and Plaintiff stipulated to the instruction with regard to the burden of proof.

"A party will not be heard on a motion for a new trial to complain of an instruction which was . . . invited by[] him." 66 C.J.S. New Trial § 46.  "It is a cardinal rule . . . that a party may not challenge as error a ruling or other trial proceeding invited by that party." Saewitz v. Lexington Ins. Co., 133 Fed. Appx. 695, 702 (11th Cir. 2005) (quoting Birmingham Steel Corp. v. Tenn. Valley Auth., 352 F.3d 1331, 1341 n.5 (11th Cir. 2003)). If error is invited by the party asserting it, even plain error will not warrant reversal or a new trial. See Ford, 289 F.3d at 1294.

"Where a party, rather than just remaining silent and not objecting to a proposed jury instruction, responds to the court's proposal with the words 'the instruction is acceptable to us,' this constitutes invited error." Id. (quoting United States v. Fulford, 267 F.3d 1241, 1247 (11th Cir. 2001)).  Here, counsel for both parties drafted and agreed to the substance of the instruction.  Mr. Boudet stated, "[W]e've agreed on the revised language of instruction 12." (Trial Tr. at 2, Dec. 5, 2007.)  The two changes that the parties proposed after that stipulation – which were rejected – had nothing to do with the assignment of burden contained in the instruction.  Because Plaintiff invited the error complained of and also waived any objection to the instruction, Plaintiff is not entitled to a new trial on this ground.

### B. Closing Argument

Plaintiff argues that during closing argument, defense counsel mischaracterized the testimony of witness Rex Welsh, which, it contends, amounted to an accusation of ethical misconduct by Plaintiff's counsel.[1]  Specifically, defense counsel stated that Plaintiff had a

---

[1] Plaintiff's counsel did not object during Defendant's closing argument and now takes the spurious position that it consciously withheld objection because it was certain the

similar hot fix on its own website, which was ordered to be taken down by their attorneys. (Trial Tr. 56, Dec. 5, 2007 ("[W]hen we revealed that [Plaintiff] had a hot fix on its website, ignore, [Plaintiff] says, the fact that they went and took it down. Got an instruction from their lawyer, take it down.").) Plaintiff contends that the removal was ordered not by counsel but by Mr. Welsh after Plaintiff's counsel sent him an email asking him about the file.

"'A district court has wide discretion to regulate the scope of argument. For reversible error to be found in closing argument, the challenged argument must be plainly unwarranted and clearly injurious.'" Rosa v. City of Fort Myers, No. 2:05-cv-481, 2008 WL 398975, at *3 (M.D. Fla. Feb. 12, 2008) (quoting Goldsmith v. Bagby Elevator Co., No. 06-14440, — F.3d —, 2008 WL 150585, at *16 (11th Cir. Jan. 17, 2008)). "'The standard for determining whether a jury verdict should be set aside as a result of misconduct of counsel is whether the conduct was such as to impair gravely the calm and dispassionate consideration of the case by the jury.'" Id. (quoting BankAtlantic v. Blythe Eastman Paine Webber, Inc., 955 F.2d 1467, 1474 (11th Cir. 1992) (internal quotation marks and citations omitted)). In light of the

---

objection would be overruled based on the Court's alleged "opinion of objections during closing argument." (Doc. 159 at n.2.) In response to an inquiry from Plaintiff's counsel regarding appropriate subject matter during closing argument, the Court stated, "I'm going to give both sides latitude in their argument. If what you're trying to do is avoid an objection, I hope there are no objections." (Trial Tr. 10, Dec. 5, 2007.) This statement was in no way a signal to the attorneys that they should forgo preserving their record when faced with improper argument. Objections during closing argument are undesirable because they are especially disruptive but they are by no means prohibited or looked down upon in the face of improper conduct. The hope is that counsel's closing argument does not invite or necessitate objection. According to Plaintiff, it not only remained silent at the risk of waiving its objection, but it actually considered objecting and chose to waive it rather than face the risk of being overruled in front of the jury. The choice was Plaintiff's. Cf. Curtis Publ'g Co. v. Butts, 351 F.2d 702, 714 (11th Cir. 1965).

fact that Mr. Welsh ordered the removal of the hot fix in response to an email from Plaintiff's counsel, the Court cannot conclude that defense counsel's statement was entirely or plainly unwarranted even though Mr. Welsh stated that he was not instructed by the lawyers to remove the hot fix. Moreover, no prejudice resulted from the suggestion such as would inflame the passions of the jury or "impair gravely the [jury's] calm and dispassionate consideration of the case." Even if the suggestion was injurious, however, the potential prejudice was cured during Plaintiff's rebuttal argument, when the factual discrepancy was corrected.

Plaintiff further argues that it is entitled to a new trial based on the inclusion of a special jury instruction during the trial regarding the potential that Ms. Dawn Giebler-Millner, attorney for Plaintiff, may testify as a fact witness and that she was associated with the negotiations of the Settlement Agreement. At trial, Plaintiff's counsel objected to the timing of the instruction. Plaintiff now contends that it was prejudiced by the timing and content of the instruction because Ms. Giebler-Millner was never actually called as a fact witness. However, Ms. Giebler-Millner intimated during her opening that she had special knowledge of the parties' intent during the negotiations of the Settlement Agreement – the very issue to be decided by the jury – and her name appeared on exhibits submitted in evidence. The instruction was not prejudicial and indeed, it was proper to avoid potential jury confusion and prejudice to Defendant.

### C. Evidentiary Matters

Plaintiff also raises a series of disputes regarding the Court's evidentiary rulings as a basis for new trial. The Court exercised its discretion in deciding the evidentiary matters

presented by the parties. "[N]ew trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great – not merely the greater – weight of the evidence." Hewitt, 732 F.2d at 1556 (quoting Conway v. Chem. Leaman Tank Lines, Inc., 610 F.2d 360, 363 (5th Cir. 1980)). None of Plaintiff's evidentiary disputes is substantial, and none warrants a new trial.

### D. Defendant's Rule 50 Motion

In making its motion for a new trial, Plaintiff urges the Court to vacate the judgment as a matter of law entered in favor of Defendant on Plaintiff's breach of contract claim. Plaintiff had claimed that Defendant breached a Settlement Agreement by continuing to post hot fixes containing Plaintiff's software code on its web pages. Defendant argued that Plaintiff had only claimed and had only presented evidence suggesting a breach of § 5(a) of the Settlement Agreement. The Court had already pointed out that it did not appear that § 5(a) could form the basis of a breach of contract claim because § 5(a) concerned past conduct and it did not impose future obligations on either party.[2] (See Doc. 102 at n.13.)

---

[2] Section 5(a) of the Settlement Agreement provides:
(a) The parties hereby ratify and confirm that the License Agreement has been and is terminated and that VERITAS discontinued distributing any CDP software to new end users as of January 14, 2004, the date on which VERITAS stopped exercising its post-termination distribution option under Section 15.3 of the License Agreement. The Parties further ratify and confirm that any post-termination support relationship between CDP and VERITAS (including any and all post-termination support obligations placed on CDP as well as any and all post-termination support benefits conferred on VERITAS) was terminated at VERITAS'[s] request on May 14, 2004. To the best of VERITAS'[s] knowledge, VERITAS has not distributed any CDP software to any third parties since May 14, 2004 except

The Court granted Defendant's motion for judgment as a matter of law on the ground that § 5(a) imposed no prospective contractual obligations capable of being breached. In response, Plaintiff moved to amend its pleadings to conform to the evidence in order to clarify that its breach of contract claim rested on Defendant's exceeding the scope of the license granted in § 5(b) of the Settlement Agreement or a combination of the two sections instead.[3] Defendant pointed out that § 5(b) granted a license and that any conduct in contravention of § 5(b) constituted copyright infringement, not a breach of contract.

The Court agreed with Defendant after independently consulting <u>Nimmer on Copyright</u>. The Court had already pointed out that Plaintiff's breach of contract claim was essentially its attempt to have two bites at the liability apple. (<u>See</u> Doc. 102 at n.1.) The Court concluded that §§ 5(a) and (b) did not create a covenant running in favor of Plaintiff and that copyright infringement – not breach of contract – was the appropriate legal framework for the jury to consider Defendant's conduct. In distinguishing between a breach

---

as permitted under section 3.2.5 of the License Agreement.

[3] Section 5(b) of the Settlement Agreement provides:
> (b) The Parties agree that paragraph 15.5 is deleted in its entirety and substituted in its place is the following: *Support After Termination*. Upon termination or expiration of this Agreement, VERITAS may retain copies of the Product, Documentation and OS ports for the sole purposes of providing maintenance and support for existing End Users and retaining archive versions of the VERITAS Products. CDP has no obligation to provide post-termination support under the License Agreement.

of contract claim and a copyright infringement claim as it pertains to violating license provisions, Nimmer provides:

> If the grantee's improper conduct constitutes a breach of a covenant undertaken by the grantee . . . and if such covenant constitutes an enforc[ea]ble contractual obligation, then the grantor will have a cause of action for breach of contract. . . . If the nature of a licensee's violation consists of a failure to satisfy a condition to the license . . . it follows that the rights dependent upon satisfaction of such condition have not been effectively licensed, and therefore, any use by the licensee is without authority from the licensor and may therefore, constitute an infringement of copyright.

Melville B. Nimmer & David Nimmer, 3-10 Nimmer on Copyright § 10.15[A]. Thus, as a matter of law, the breach of contract claim could not stand even if the Court had permitted Plaintiff to amend its pleadings. The motion for a new trial on this ground must be denied.

### E. Voir Dire

Plaintiff claims that it was prevented from discovering possible bias against litigation on the part the venire panel. Based on the Court's general line of questioning during voir dire, a number of potential jurors revealed that they had been named as defendants in lawsuits. The Court followed up and questioned those jurors as to the basis of those suits and their outcomes. The Court then asked each juror whether those litigation experiences would have any bearing on his or her current ability to weigh the evidence in an unbiased fashion.

The manner in which voir dire is conducted, including the questions ultimately submitted to a jury, is committed the sound discretion of the court. United States v. Schlei, 122 F.3d 944, 994 (11th Cir. 1997). The Court's voir dire procedure adequately probed any

potential bias in the venire.  Not allowing Plaintiff to question the jurors again to eke out potential bias – after the Court had adequately done so – does not warrant a new trial.

### III. Conclusion

In accordance with the foregoing, Plaintiff's Second Amended Motion for a New Trial (Doc. 159) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida this 22d day of February, 2008.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Party